## UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

LINDSAY OLSON,

                            *Plaintiff*,

        -v-                                              Case No. 25-cv-24904

AUBREY WEBB, *et al.*

                            *Defendants*.

## DEFENDANTS' MOTION TO DISMISS COMPLAINT

Defendants  Law Offices of Aubrey Webb and Aubrey Webb, Pro Se, (together, "Defendants" or "Aubrey Webb, " or "Webb"), move this Court to dismiss Plaintiff Lindsay Olson's Complaint because it is time barred under the applicable statute of limitations, barred by the doctrine of collateral estoppel, barred by the doctrine of fair use, and for failure to state a claim upon which relief can be granted.  Defendants also request an award of reasonable attorney's fees, expenses, and costs incurred in defending against this lawsuit, pursuant to 17 U.S.C. § 505.

## INTRODUCTION

This case is about a litigious plaintiff who is suing various criminal defense lawyers who defended January 6 defendants in the District of Columbia in 2021, for events that happened well over five (5) years ago. Initially, Defendant Aubrey Webb represented Gabriel Garcia, a Miami resident, in his criminal case arising from the events that occurred at the United States Capitol on January 6, 2021, in Case No. 21-cr-129-ABJ, *United States v. Gabriel Garcia* in the District of Columbia.

In Garcia's criminal case, in early 2022, Webb prepared a motion to change venue and retained an expert, John Zogby, to prepare report and survey of the potential venire of D.C. and any

1

biases they may have regarding January 6 defendants and cases. Relying only on Zobgy's report, Webb filed his motion to change venue on February 1, 2022. *Id*. at ECF No. 54.

After Webb filed his motion relying on his expert witness, other January 6 attorneys used the same Zogby study that Webb based his motion on and had filed in PACER. This was common practice, as January 6 attorneys collaborated and shared litigation strategies as they faced the same unique legal challenges. Two of those attorneys were the attorneys for January 6 criminal co-defendants Connie Meggs, who was represented by Juli Haller, and her co-defendant Thomas Caldwell, who was represented by David Fisher in Case No. 21-cr-28 and 22-cr-15. Attorneys Haller and Caldwell retained the Plaintiff here to conduct a venire study and report for a change of venue motion and paid $30,000. They filed their change of venue motions and Plaintiff's full report in PACER, on April 22, 2022, making Plaintiff's report public record and accessible to all. In their motions, they also cited and relied on Webb's expert report. ECF No. 93 in Case No. 22-cr-15, ECF No. 654 in Case No. 21-cr-28. In other words, the very attorneys who hired Plaintiff for her Report cited Webb's expert's report first in their own filings. At no time did these two attorneys, who hired Plaintiff, tell Aubrey Webb that he could not use their expert's report to support his pending motion, just like they used his, and Plaintiff does not claim otherwise in her complaint.

Subsequently, while waiting for the court to rule, on May 3, 2022, Webb then filed in PACER a notice of supplementary filing citing Plaintiff's report, the same report that that was previously filed in PACER and public record on April 15, 2022. *Garcia*, ECF No. 71. For this one-time filing, and now over three years later, Plaintiff demands $30,000 from Aubrey Webb. Notably, Plaintiff is currently suing three other January 6 criminal defense attorneys, but those lawsuits are in the District of Columbia: Brand Woodward, et al., in Case No. 25-cv-03875, Kira West in Case No. 25-cv-3840, Paul Garity in Case No. 25-cv-4231, for the same copyright claims made against Defendants here. And Plaintiff previously sued six other January 6 criminal defense attorneys for the same copyright claims. As detailed later, none of Plaintiff's copyright claims have been successful, as they have been

2

dismissed or rejected by a jury in the District of Columbia in Case No. 23-cv-523-JEB. Those attorneys represented January 6 defendants in the so-called Oath Keepers trial, in Case No. 21-cr-175 in the District of Columbia.

The practice of including supportive publicly available documents in motions, particularly documents filed on the PACER system by other parties in the same case, is routine and part of the competent, vigilant representation expected of any criminal defense counsel. Garcia's Motion to Change Venue was ultimately denied, and Aubrey Webb continued in his representation of Garcia without any issue being raised about any juror bias report.

More than three years after Aubrey Webb engaged in this routine practice of submitting what had already been a widely disseminated and publicly filed document, Plaintiff filed her Complaint alleging that such action amounted to copyright infringement. *See* Complaint, filed on October 23, 2025) (ECF No. 1).

Plaintiff asserts that she contracted with other attorneys to prepare the Report addressing issues of potential juror bias, and that such Report could have been "licensed for use in other J6 criminal cases." Complaint, ¶¶ 16, 21. However, Plaintiff also admits that she authorized that Report to be filed publicly via PACER on two criminal dockets, and that such Report was in fact filed on those two public dockets. *Id.* at ¶ 25 ("After Plaintiff delivered a copy of the Report to the Requesting Attorneys, they uploaded the Report to the Court's public docket . . . causing a public display of the Report in support of a motion to transfer venue[.]"). Plaintiff does not claim that she took any steps to restrict public access to her Report. She does not allege her agreement required authorized attorneys to file the Report under seal. Likewise, she does she allege that she moved the presiding judge in either case to place the Report under seal. Like all documents used in judicial proceedings, Plaintiff's Report became a public judicial record once it was filed on PACER for consideration by the Court. Despite Plaintiff's many missteps and her long period of inaction, she now demands payment from Aubrey Webb, and other January 6 attorneys, for alleged copyright

3

infringement.

For the reasons detailed herein, Plaintiff has no cause of action against the Defendants, and the Complaint must be summarily dismissed with prejudice.

Critically, the Complaint is time barred under 17 U.S.C. § 507(b). The three-year statute of limitations began to run on May 3, 2022, when Aubrey Webb filed a copy of the Plaintiff's Report on the criminal docket more than three years prior to the filing of this action. In addition, that he filed and other attorneys filed the Plaintiff's report as supplemental authority was public record and easily discoverable.

Next, Plaintiff is collaterally estopped from relitigating this claim. Plaintiff brought a nearly identical claim in this Court against several January 6 attorneys in *In Lux Research v. Hull McGuire*, PC, 1:23-cv-00523 (D.D.C.). In that prior case, the Court dismissed the copyright infringement claims for alleged misuse of the same Report for nearly all the defendants, and a jury found no copyright infringement for a defendant posting onto the docket the same Report. *Id.* at ECF No. 138.

Moreover, the Complaint stands in opposition to case law from several other circuits holding that using copyrighted documents in the litigation process establishes fair use. The few cases that Plaintiff cites in which courts have held otherwise are distinguishable from the allegations here. Further, the Complaint runs against a case law recognizing the constitutional rights of the public to access, review, and distribute documents filed on PACER during judicial proceedings.

Lastly, the Complaint is unsupported by well-pleaded facts and fails to state a claim on which relief can be granted. The Court need not take as true Plaintiff's numerous unsupported legal conclusions, such as: Defendants continue to use Plaintiff's report to the current day, when it was cited to once back in 2022. Aubrey Webb has worked for the Department of Justice for almost two years and his law offices were administratively dissolved; so, to claim he continues to use or profit

off Plaintiff's report is disingenuous and is really a smokescreen for missing the three-year statute of limitations. More importantly, Plaintiff's legal theory would deter aggressive advocacy on behalf of criminal defendants and curtail the public's right to access and review public judicial records.

## **LEGAL STANDARD**

### I.     **Motion to Dismiss**

A complaint may be dismissed for failure to state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6).  A court considering 12(b)(6) motions to dismiss should consider the complaint's factual allegations as true and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged. *Lloyd-Adams v. Kelsch.*, 793 F. Supp. 3d 1362, 1367-68 (M.D. Ga. 2025). But the court generally does not accept as true, legal conclusions fashioned as a factual allegation. *Id.* at 368. Further, a court need not accept as true a plaintiff's own inferences unsupported by the facts set forth in the Complaint. *Id.* at 1367-68.

A court "may judicially notice certain facts on a motion to dismiss." *Lloyd-Adams,* 793 F. Supp. 3d at 1369. Indeed, a "[c]ourt Court may notice those documents only for the limited purpose of recognizing the record's existence and the record's content, and the fact of that litigation." *Id.* (citing *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1277-78 (11th Cir. 1999). And judicial notice is appropriate where a fact "is not subject to reasonable dispute because it . . . (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

### II.     **Judicial Notice**

As a threshold matter, Aubrey Webb requests that this Court take judicial notice of several matters of public record relating to Plaintiff's allegations pursuant to Fed. R. Evid. 201. Webb specifically asks the Court to take judicial notice of the dockets and relevant filings in the following cases:

- *United States v. Gabriel Garcia,* 21-cr-129 (D.D.C.)

- *Lindsay Olson v. Brand Woodward, et al.,* 25-cv-3785 (D.D.C.)

- *Lindsay Olson v. Kira West*, 25-cv-3840 (D.D.C.)

- *Lindsay Olson v. Paul Garity, et al.,* 25-cv-4231 (D.D.C.)

- *In Lux Research, et al., v. Hull McGuire PC, et al.*, 23-cv-00523 (D.D.C)

- *United States v. Joseph Biggs, et al.,* 21-cr-175 (D.D.C.)

- *United States v. Connie Meggs, Thomas Caldwell, et al.,* 21-cr-28 (D.D.C.)

- *United States v. Connie Meggs, Thomas Caldwell, et al.,* 22-cr-15 (D.D.C.)

Each case for which Aubrey Webb requests judicial notice directly relates to the allegations contained in the Complaint. *Garcia* is the case in which Webb represented Gabriel Garcia, meaning it is the case upon which Plaintiff bases her entire action. Plaintiff acknowledges that the Report at issue was created in connection with the *Meggs and Caldwell* cases on April 15, 2022, and that such Report was filed onto those public dockets with her knowledge. Complaint, ¶ 25.  The *Hull McGuire* case bars the claim in Plaintiff's Complaint through collateral estoppel (*In Lux Research* was Plaintiff's company), which stemmed from the *Biggs* criminal trial. Finally, the current three open cases Plaintiff has now filed against former January 6 attorneys for the same copyright claims, as mentioned above, are listed. These dockets and their contents are public records not subject to any reasonable dispute because they are maintained on PACER, a source whose accuracy cannot reasonably be questioned.

Taking judicial notice of these dockets and their contents would comport with Judge James Boasberg's prior ruling on a similar motion to dismiss a similar complaint filed by the Plaintiff in *Lux Research, et al., v. Hull McGuire PC, et al.,* 1:23-cv-00523 (D.D.C). In taking judicial notice of the related criminal docket in that case, Judge Boasberg noted that he was, "declin[ing] to close [the Court's] eyes to the materials on which Plaintiffs' copyright claim relies." *In Lux Research, et al., v. Hull McGuire PC, et al.*, 1:23-cv-00523 (D.D.C), Order, at 9 (ECF No. 061)

(Sept. 19, 2023).  Accordingly, because they directly bear upon Plaintiff's claims here, this Court should take judicial notice of the dockets and their contents.

<u>**ARGUMENT**</u>

I.    <u>**Plaintiff's Claims are Time-Barred**</u>

Claims for copyright infringement must be, "commenced within three years after the claim accrued." 17 U.S.C. § 507(b). As discussed below, the law is not entirely settled as to whether the Court must apply the "discovery rule" or the "injury rule" to calculate Plaintiff's statutory timeliness of her claims.  Aubrey Webb contends it is the "injury rule" that must be applied. Regardless, under either one, Plaintiff's claims against Aubrey Webb are untimely.

a.    **The Discovery Rule in Federal Copyright Infringement Claims**

The Supreme Court has recently, "assume[d] without deciding" the applicability of the discovery rule to copyright infringement claims. *Warner Chappell Music, Inc. v. Nealy*, 601 U.S. 366, 368 (2024). The majority in *Nealy* explicitly noted that it has, "never decided" the discovery rule's applicability to copyright claims, and it avoided ruling on its applicability because, "that issue is not properly presented here[.]" *Id.* at 371. But the dissent in *Nealy* noted several of the Supreme Court's prior cases which explicitly disclaim the discovery rule's applicability to copyright infringement claims, noting that a copyright claim accrues, "when an infringing act occurs, not at some later date." *See id.* at 375-76 (Gorsuch, J., dissenting) (internal quotation marks omitted) (citing *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 670 (2014)). As such, Aubrey Webb asserts this Court to apply the "injury rule" and dismiss the Complaint because it was filed on October 23, 2025, which is more than three years after the alleged infringing act of Aubrey Webb's filing of Plaintiff's Report on May 3, 2022.

Two Circuit Courts of Appeal have acknowledged that the Supreme Court's holding in *Nealy* still leaves the issue of whether to apply the discovery rule unresolved. *See Motorola Solutions, Inc. v. Hytera Communications Corp., Ltd.*, 108 F.4th 458, 479 (7th Cir. 2024) ("*Nealy*

incorporate[d] an assumption: that the discovery rule governs the timeliness of copyright claims. . . . The Supreme Court has never decided whether that assumption is valid, and in *Nealy*, its review exclude[d] consideration of the discovery rule." (cleaned up) (internal citations and quotation marks omitted)). *See also Foss v. Eastern States Exposition*, 149 F.4th 102, 111 (1st Cir. 2025) ("[T]he Court repeatedly cited *Petrella's* holding that a copyright claim accrues when an infringing act occurs . . . At no point did the Court . . . suggest that anything other than the infringing conduct itself, or the plaintiff's discovery of that conduct, could cause the three-year statute of limitations to begin to run." (cleaned up) (internal citations and quotation marks omitted)). And here, the Eleventh Circuit also uses and recognizes both rules. *See Global Weather Productions LLC, v. Wood Projections,* 2026 WL 25086 (S.D. Fla. January 5, 2026) (stating the Eleventh Circuit recognizes both the discovery rule and the injury rule, and while noting there is no circuit precedent on which rule applies, the court also recognized courts in the Southern District seem to apply the discovery rule).

### b. Applying the Injury Rule, Plaintiff's Claims are Untimely

Under the injury rule, the limitations period begins to run, "at the point when the plaintiff can file suit and obtain relief." *Nealy*, 601 U.S. at 375 (Gorsuch, J., dissenting). The "injury rule" has been referred to as the "standard rule" when two plausible constructions of a statute of limitations exist because, "Congress legislates against the standard rule that the limitations period commences when the plaintiff has a complete and present cause of action." *Rotkiske v. Klemm*, 589 U.S. 8, 13 (2019) (internal quotation marks omitted) (quoting *Graham County Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 418–19 (2005)). *See also Nealy*, 601 U.S. at 375 (Gorsuch, J., dissenting) ("We call this the 'incident of injury rule' . . . [a]nd we interpret statutes with that 'standard rule' in mind." (internal citation omitted)). Aubrey Webb asks the Court to apply the injury rule to the Complaint because of prior Supreme Court precedent presuming against use of the discovery rule where Congress has not provided for it in a statute, and given the lack of binding direction from either the 11th Circuit or the Supreme Court that this

8

Court should apply the discovery rule when considering the timeliness of a copyright claim.

Applying the injury rule here, Plaintiff's claims are time-barred. Plaintiff alleges that, "[i]n or about 2022, Defendants copied Plaintiff Olson's Report and published a copy of the Report in its entirety, and on May 3, 2022, uploaded a copy of the Report on the public PACER . . .." Complaint ¶ 29. Even if filing a publicly available document on PACER can amount to copyright infringement, Plaintiff's statutory period began to run once the Report was copied and published. Under the injury rule, Plaintiff's claims as alleged here needed to be brought in Court no later than May 3, 2025, or three years after May 3, 2022. Therefore, this case as pled is untimely and must be dismissed.

### c. Even If the Discovery Rule Applies, Plaintiff's Claims Against These Defendants are Time-Barred

Even if the discovery rule applies to Plaintiff's claims, Plaintiff would have three years from when she "knows or reasonably should know that an infringement occurs." *See Starz Entertainment, LLC v. MGM Domestic Television Distribution, LLC*, 39 F.4th 1236, 1237 (9th Cir. 2022). Generally, the discovery rule has been used to toll the statute of limitations for copyright infringement in instances where there was fraudulent concealment that prevented an individual from discovering the infringement. *See TRW Inc. v. Andrews*, 534 U.S. 19, 27 (2001) ("[E]quity tolls the statute of limitations in cases of fraud or concealment; it does not establish a general [discovery rule] presumption applicable across all contexts."). To allege fraudulent concealment of any kind, Plaintiff would have needed to plead, "(1) that defendants engaged in a course of conduct designed to conceal evidence of their alleged wrong-doing and that (2) [the plaintiffs] were not on actual or constructive notice of that evidence, despite (3) their exercise of diligence." *Larson v. Northrop Corp.*, 21 F.3d 1164, 1172 (D.C. Cir. 1994)).  The closest Plaintiff comes to arguing any concealment is alleging that Defendants filed the Report on the publicly accessible court docket on PACER and referenced this public document repeatedly in a publicly accessible motion also filed on PACER. Complaint, ¶¶ 53-55. Even

applying the most liberal standard, the action of filing a document publicly onto a public docket in a criminal case cannot be reasonably argued as conduct designed to conceal the action of filing a document.

Plaintiff's allegations in this complaint, and in the *Hull McGuire* case, make clear that a diligent effort to uncover the alleged infringement would have resulted in her discovery of her claims against Defendants no later than October 10, 2022, still more than three years before the Complaint was filed. Indeed, the question of when Plaintiff can be chargeable with knowledge is resolved through judicial notice of the related dockets and the allegations in Plaintiff's Complaint. Plaintiff alleged in the *Hull McGuire* case that on October 10, 2022, "Hull published the October 2022 Report in the *Nordean* case without making the payment for authorization, [meaning] the Hull Defendants committed copyright infringement by copying, distributing and publicly displaying Plaintiff Olson's Report[.]" Amended Complaint, ¶ 137, *In Lux Research, et al., v. Hull McGuire PC, et al.*, 1:23-cv-00523-JEB (D.D.C.) (ECF No. 070-1) (Oct. 25, 2023). Considering this allegation through judicial notice would require the Court to accept that October 10, 2022, was the absolute final moment that Plaintiff can argue she learned about the existence of so-called pirated copies of the Report. Even under this exaggeratedly generous application of the discovery rule, Plaintiff was charged with knowing about Plaintiff's filing no later than October 10, 2022, meaning she had until October 10, 2025, to file this complaint. Plaintiff's claim against Aubrey Webb is therefore untimely and her Complaint must be dismissed. In *Hull McGuire*, District of Columbia District Judge Boasberg expressed skepticism about Plaintiff's diligence in investigating her potential claims. Memorandum Opinion, Motion to Vacate and Amend, p. 8, *In Lux Research, et al., v. Hull McGuire PC, et al.,* 1:23-cv-00523-JEB (D.D.C.) (ECF 076) (Nov. 27, 2023) ("Plaintiffs rejoin that they did not come across the May 2022 filing until conducting research for their Opposition to the motions to dismiss in summer 2023. [] No doubt, Plaintiffs with some diligence could — and should — have

discovered the filing on the Nordean docket earlier." (emphasis added)). However, Judge Boasberg stated this in the context of leave to file an otherwise timely amended complaint in November 2023. Judge Boasberg's observations further support the proposition that Plaintiff's claim is time-barred in this matter, as Judge Boasberg acknowledges that Plaintiff was on notice that so-called pirated copies of her Report were in existence no later than May 3, 2022.

### d.   Continuing Violations Do Not Apply to Copyright Infringement Claims

Plaintiff tries to neatly sidestep the statute of limitations issue by alleging some nebulous continuing and ongoing violation. *See e.g.* Complaint, ¶¶ 74-84. These are conclusory allegations that this Court can and should ignore when dismissing this Complaint.

Assuming *arguendo* that the Court would accept these insufficient claims as true, the Seventh Circuit has noted that the Supreme Court has explicitly rejected the argument that one continuing violation would toll the statute of limitations for copyright claims. *See Chicago Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 615 (7th Cir. 2014) ("Separately accruing harm should not be confused with harm from past violations that are continuing. . . We take the Court's statement to mean that the continuing-violation doctrine does not apply in this context." (internal quotation marks and citations omitted) (quoting *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671 n.6 (2014)). *See also Petrella*, 572 U.S. at 672 ("[W]hen a defendant has engaged (or is alleged to have engaged) in a series of discrete infringing acts, the copyright holder's suit ordinarily will be timely under § 507(b) with respect to more recent acts of infringement (i.e., acts within the three-year window), but untimely with respect to prior acts of the same or similar kind."). Plaintiff has alleged just one act amounting to copyright infringement that occurred in May of 2022. Complaint, ¶ 29. Incredibly, Plaintiff asserts that this one-time citation combined with the Report's ongoing presence on PACER gets her around the statute of limitations.

### II.   <u>Plaintiff is Collaterally Estopped from Relitigating This Copyright Claim</u>

To demonstrate collateral estoppel, a movant must demonstrate that: (1) the issue in a

pending action is identical to the one involved in the prior lawsuit; (2) the issue must have been litigated in the prior lawsuit; (3) the determination of the issue must have been a critical and necessary part of the judgment in the action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding. *McGillvary v. Hartley,* 2025 WL 2791081 (M.D. Ga., September 30, 2025).

As to the first element, Plaintiff litigated the issue of whether lawyers publishing her report on a public docket is a violation of her copyright. Both a judge (at the motion to dismiss stage) and a jury have ruled against Plaintiff on the copyright claims in that prior litigation. *See* Memorandum Opinion, Motion to Dismiss, p. 20 *In Lux Research, et al., v. Hull McGuire PC, et al.*, 1:23-cv-00523-JEB (D.D.C.) (ECF No. 061) (Sept. 19, 2023) ("In short, the Court concludes that Plaintiffs' allegations do not state a claim for relief against Moving Defendants under the Copyright Act."). *See also* Verdict Form, ¶ 1, *In Lux Research, et al., v. Hull McGuire PC, et al.*, 1:23-cv-00523-JEB (D.D.C.) (ECF No. 138) (Jan. 28, 2025) ("Has Plaintiff proven by a preponderance of the evidence that Defendants infringed her copyright?" The jury foreperson checked "No."). The requirement for a mutuality between the parties has been abandoned, and non-mutual use of collateral estoppel is acceptable. *See, e.g., Kennamer v. City of Guntersville*, 2024 WL 4592362 (N.A. Ala. October 28, 2024) ("Although federal courts used to require strict mutuality of parties for collateral estoppel, the approach now is to allow defensive use of non-mutual collateral estoppel.")

As to the second element, "[a] determination ranks as necessary or essential only when the final outcome hinges on it." *Bobby v. Bies*, 556 U.S. 825, 835 (2009).  In the first action, the ultimate issue decided was whether "Defendants committed copyright infringement by filing the Report on the *Nordean* public docket." *See* Memorandum Opinion, Motion to Dismiss, p. 11, *In Lux Research, et al., v. Hull McGuire PC, et al.*, 1:23-cv-00523-JEB (D.D.C.) (ECF No. 061) (Sept. 19, 2023).  *See also* Final Jury Instructions, p. 6 *In Lux Research, et al., v. Hull McGuire*

*PC, et al.*, 1:23-cv-00523-JEB (D.D.C.) (ECF No. 136) (Jan. 28, 2025) ("Plaintiffs here allege that Defendants infringed their copyright in the October 2022 Report prepared for Defendants to use in their motion to transfer venue in the trial of their client, Proud Boys member Joseph Biggs."). Given that Plaintiff raises the exact claim against Aubrey Webb in relation to a filing on the *Garcia* case, the second element is met here.

The third and fourth elements are met too: as the Plaintiff's copyright claim was the first on jury verdict form, and there is no doubt Plaintiff was given her day in court. As such, the Court should find the elements of nonmutual defensive collateral estoppel met and dismiss Plaintiff's complaint in its entirety.

### III.   Defendants' Filing the Report on the Docket is Both Protected by the Constitutional Right to Access and Review Judicial Records and by Fair Use

#### a.  The Right to Access and Review Judicial Records

The Supreme Court has long recognized a "general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). And the Eleventh Circuit has also made clear: "The common-law right of access to judicial proceedings, an essential component of our system of justice, is instrumental in securing the integrity of the process." *Chicago Tribune Co. v. Bridgestone/Firestone*, 263 F.3d 1304, 1311 (11th Cir. 2001).

Here, Plaintiff's Report was made available on PACER with her knowledge and approval on or about April 15, 2022. Complaint, ¶ 24. Tellingly, Plaintiff makes a concession fatal to her claim in the Complaint by alleging that, "Defendants could have simply referenced that Plaintiff authored the Report, noticed the court that it existed and summarized the findings." Complaint, ¶ ¶ 63-67. This amounts to a concession that Aubrey Webb lawfully had access to the contents of the Report. Plaintiff fails to provide any meaningful distinction between her conceded lawful use and Aubrey Webb's actual use.  These dockets further reflect that Plaintiff did not take any

action to place these copyrighted materials under seal, either by having the authorized attorneys move to seal them or by moving to seal them herself. After documents are posted on PACER as part of a judicial proceeding for the Court's consideration, they become judicial records. *Callahan v. United Network for Organ Sharing,* 17 F.4th 1356, 1359 (11th Cir. 2021)( reasoning the Eleventh Circuit has "been resolute in its enforcement of the presumption of public access" to judicial proceedings) Plaintiff's own allegations show that the Report at issue is clearly and indisputably a judicial record, as Plaintiff alleges that the Report was actually used in support of a brief meant to influence a judge's decision on a pending motion prior to any action taken by Aubrey Webb. Complaint, ¶¶ 24-28.

The closest a case has come to touching on this issue of whether an author can assert copyright infringement for the subsequent use of material previously prepared for litigation and filed on a docket is *Unclaimed Property Recovery Service, Inc. v. Kaplan*, 734 F.3d 142 (2d Cir. 2013). In that case, the Second Circuit affirmed a dismissal of a complaint for failure to state a claim where an individual asserted copyright infringement over a complaint that he prepared and filed in a prior class action lawsuit; after the individual withdrew from the class action lawsuit, the individual sued his former attorney for preparing and filing an amended version of the complaint on behalf of the remaining class plaintiffs. *Id.* at 143-44.  The Second Circuit held that "the holder of a copyright in a litigation who has authorized a party to a litigation to use the document in the litigation . . . necessarily convey not only to the authorized party but to all present and future attorneys and to the court, an irrevocable authorization to use the document in the litigation thereafter." *Id.* at 144 (emphasis added). The Second Circuit acknowledged the concerns that underlie Plaintiff's claims and about which Aubrey Webb now warns, stating, "[w]e do not mean to suggest that permission of the copyright holder is inevitably needed for use of a copyrighted document in litigation. Our ruling concerns only the consequence of a grant of authorization for use in litigation which the holder then purports to

withdraw." *Id.* at 144 n.1. The Second Circuit also noted that to rule otherwise would "unduly interfere with the litigation process, [and would] limit the district court's ability to manage its cases." *Id.* at 146.

Whatever copyright Plaintiff may have in the Report does not supersede the public's right to access judicial records and use them in the same or similar judicial proceedings. Plaintiff authorized her Report to be filed in full on at least two dockets in the District Court of Columbia to support a change-of-venue motion. Plaintiff realizes her inability to assert copyright over judicial records, conceding, "Defendants could have simply referenced that Plaintiff authored the Report, noticed the court that it existed and summarized the findings." Complaint, ¶ 64. Thus, this Court must dismiss Plaintiff's complaint for failure to state a claim.

### b.  Aubrey Webb's Actions Constitute Fair Use

Although, "it is the unusual case that a court considers fair use on a motion to dismiss, let alone grants a motion on that basis" *Creative Photographers, Inc. v. Julie Torres Art, LLC,* 2023 WL 2482962 (N.A. Ga., March 13, 2023), here is such a case. Courts in other circuits have affirmed dismissals of actions based on fair use where the nature of the allegedly infringing work can be determined without discovery, primarily due to the complaint's reference to the work and alleged infringements contained in the complaint. *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) ("Because the claim was limited to the production and distribution of a single episode, the district court was correct to rely solely on the two expressive works referenced in *Brownmark's* amended complaint and attached to SPDS's motion, as well as the allegations in the complaint, to decide on the fair use defense."). Here, Plaintiff has attached the allegedly infringing Report to the Complaint. *See* Complaint, Exhibit A. For these reasons, the Court can decide that Aubrey Webb's alleged use of the Report was fair use based on the allegations contained in the Complaint.

In determining whether use of copyrighted material is protected as fair use, the Court must

consider: "(1) the purpose and character of the use, including whether such use is of a commercial

nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the

amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work." *See e.g.*

*In Lux Research v. Hull McGuire PC*, 1:23-cv-00523-JEB (D.D.C.) (ECF No. 083) (Feb. 26, 2024)

(citing 17 U.S.C. § 107).

At the outset, many other circuits have recognized a general rule that copyrighted material

can be included on a judicial docket without copyright infringement through the doctrine of fair

use. *See Devil's Advocate, LLC v. Zurich American Insurance Company*, 666 Fed. App'x 256, 266

n.12 (4th Cir. 2016) ("Several of our sister circuits have concluded that use of copyrighted material

in court proceedings is fair use."). Importantly for this case, the cases compiled in *Devil's*

*Advocate* and their included parentheticals are as follows: "*Hollanderv. Steinberg,* 419 Fed.

App'x 44, 47-48 (2d Cir. 2011) (affirming summary judgment on fair use where attorney sued

opposing counsel for filing his essays in a judicial proceeding); *Jartech, Inc. v. Clancy*, 666 F.2d

403, 407 (9th Cir. 1982) (affirming fair use where adult films were copied for use in judicial

proceedings, were not made for subsequent use or enjoyment, and were not for commercial use);

*Shell v. Devries*, WL 324592 (D. Colo. Jan. 31, 2007) (finding fair use where a portion of a

copyrighted website was used as an exhibit to a motion for attorney's fees), *aff'd,* 2007 WL

4269047 (10th Cir. 2007)."

One court has gone as far as to state, "[r]eproduction of copyrighted material for use in

litigation or potential litigation is generally fair use, even if the material is copied in whole."

*Stern v. Does*, 978 F. Supp. 2d 1031, 1047 (C.D. Cal. 2011), *aff'd*, 512 Fed. App'x. 701 (9th Cir.

2013), *cert. denied*, 134 S. Ct. 423, 187 L. Ed. 2d 281 (2013); *see also Denison v. Larkin*, 64 F.

Supp. 3d 1127, 1133 (N.D. Ill. 2014) ("The House Committee on the Judiciary explicitly listed

'*reproduction of a work in* legislative or *judicial proceedings or reports' as an example of a fair use*") (emphasis added) (quoting H.R. Rep. No. 94–1476, 65 (1976)). Further, at least one district court in another jurisdiction has specifically observed that copyrighted material previously accepted into evidence can be used during the legal representation of a criminal defendant, and that to hold otherwise would allow copyright law to usurp the rights of criminal defendants. *See Kulik Photography v. Cochran*, 975 F. Supp. 812, 814 (E.D. Va. 1997) ("This Court cannot agree that the Defendants did anything wrong in using an item of evidence already accepted into the case during their closing argument. To permit otherwise would permit the copyright laws to trump the constitutional rights of a criminal defendant."). Although the Court's analysis can begin and end with this line of cases, Defendants will briefly summarize each fair use factor as they apply in this case.

The first fair use factor considers the purpose and character of use, primarily focusing on whether the use is commercial in nature. So, to find commercial use here, the Court must determine that Aubrey Webb, "exploit[ed] the copyright for commercial gain – as opposed to incidental use as part of a commercial enterprise." *See Stern*, 978 F. Supp. 2d at 1045-46 (quoting *Elvis Presley Enterprises, Inc. v. Passport Video*, 349 F.3d 622, 627-28 (9th Cir. 2003), *overruled on other grounds*, *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989 (9th Cir. 2011)). It has also been observed that, "a judicial or arbitration proceeding serves a salutary truth-seeking function, and cannot be character as a purely 'commercial' endeavor, even though money damages might well be at stake." *Images Audio Visual Prods., Inc. v. Perini Bldg. Co.*, 91 F.Supp.2d 1075, 1083 (E.D. Mich. 2000). *See also Shell v. Devries*, 2007 WL 324592, at *4 (D. Colo. Jan 31, 2007) ("Nor are there any allegations to support a reasonable inference that the defendants' use of the material was commercial in nature. To the contrary, the Complaint alleges that the defendants used the copyrighted portion of the plaintiff's website as an exhibit to a motion for attorneys' fees."), *aff'd* 2007 WL 4269047 (10th Cir. Dec. 6, 2007).

Under the first fair use factor, courts also consider whether the subsequent use was transformative. 17 U.S.C. § 107(1). The Supreme Court has noted that, while important, "transformative use is not absolutely necessary for a finding of fair use[.]" *Campbell v. Acuff-Rose* Here, Plaintiff admits that her work was published and publicly available at the time Aubrey Webb filed the document in *Garcia's* case. Complaint, ¶ 25. Further, copying of material in its entirety can be transformative, "[i]n the context of news reporting and analogous activities[.]" *American Society for Testing and Materials, et al. v. Public.Resource.Org, Inc.*, 896 F.3d 437, 450 (D.C. Cir. 2018). Considering this analysis and the line of cases identified which note that the use of material in judicial proceedings broadly constitutes fair use, the Court should find the first factor weighs in favor of fair use.

The second fair use factor considers "the nature of the copyrighted work." 17 U.S.C. § 107(2). The Supreme Court has noted that this factor mainly comes down to whether a work is factual or fictional, noting "[t]he law generally recognizes a greater need to disseminate factual works than works of fiction or fantasy." *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 563 (1985). *See also American Society for Testing and Materials*, 869 F.3d at 451 ("Courts often reduce this inquiry [into the second fair use factor] to the question of whether the work is factual or fictional . . . All of the works at issue here fall at the factual end of the fact-fiction spectrum, which counsels in favor of finding fair use."). Though Plaintiff claims a level of creativity in how factual data was arranged, that does not change the fact that Plaintiff's work was entirely factual in nature. Also under this factor is the question of whether a work is published or unpublished. *See e.g. Harper & Row Publishers, Inc.*, 471 U.S. at 564 ("[T]he scope of fair use is narrower with respect to unpublished works [because] .... the author's right to control the first public appearance of his expression weighs against use of the work before its release."). However, at least one court has found that previously filing material that is otherwise unpublished on a court docket goes against finding that a work is otherwise unavailable or unpublished. *See White v. West*

18

*Pub. Corp.*, 2014 WL 3385480, at *3 (S.D.N.Y. July 11, 2014) ("[W]hile White's briefs were in some sense unpublished, this factor is made less significant by the fact that White intentionally made the briefs publicly available by filing them with the court; thus the circumstances of this case do not implicate the rationales for protecting unpublished works."). This factor therefore further weighs in favor of a finding of fair use.

The third fair use factor considers, "the amount and substantiality of the portion used in relation to the copyrighted work as a whole[.]" 17 U.S.C. § 107(3). As stated herein, this factor generally does not apply to use in the litigation process. At least one other circuit has recognized based on Supreme Court precedent that "there is no per se rule against copying in the name of fair use an entire copyrighted work if necessary." *Chicago Bd. Of Educ. v. Substance, Inc.*, 354 F.3d 624, 629 (7th Cir. 2003) (citing *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 449-50 (1984)). Aubrey Webb alleged use of the Report was during the litigation process to advocate zealously on behalf of their client, and they could only adequately do so through use of the entire Report. The Court therefore should find this factor weighs in favor of a finding of fair use.

The fourth fair use factor examines "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). "It requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the original." *American Society for Testing and Materials v. Public.Resource.Org, Inc.*, 82 F.4th 1262, 1271 (D.C. Cir. 2023) (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994)). It has been observed that this analysis requires the balancing of "monetary losses to the copyright holder against any public benefit of the copying." *American Society for Testing and Materials v. Public.Resource.Org, Inc.*, 82 F.4th 1262, 1271 (D.C. Cir. 2023) (internal quotation marks omitted) (quoting *Google LLC v.*

19

*Oracle America, Inc.*, 593 U.S. 1, 35 (2021). As there is a "strong assumption" in favor of access to judicial records, any market effect asserted by the Plaintiff must be balanced against such public rights. For these reasons, this factor is either neutral or in favor of a finding of fair use.

Plaintiff then cites a district court opinion and a state court opinion in her Complaint to preemptively argue against any possible fair use, but even a cursory review of both cases and their subsequent application reveals that they are wholly distinguishable from Aubrey Webb's. First, Plaintiff cites *Images Audio Visual Prods., Inc. v. Perini Bldg. Co.*, 91 F. Supp. 2d 1075, 1082-83, 1086 (E.D. Mich. 2000), to assert that attorneys engage in copyright infringement if they hire a photographer and then use those photos in arbitration proceedings without paying. But *Perini* does not stand for the proposition that copyrighted work can only be used in litigation with the express permission of the creator, with the Court noting, "[c]ertainly, under appropriate circumstances, the Court would not hesitate to conclude that copyright protection must yield to the need to present a complete evidentiary record." *Images Audio Visual Prods., Inc. v. Perini Bldg. Co.*, 91 F. Supp. 2d 1075, 1086 (E.D. Mich. 2000).

Moreover, Plaintiff's own analogizing of the *Perini* case shows its inapplicability: Aubrey Webb did not hire Plaintiff to create the Report, only to then use the Report without paying her for what they had fraudulently induced her to make; Plaintiff made this report for other attorneys and allowed that document to be published in its entirety on PACER. At least one district court has distinguished the *Perini* case on this basis. *Guetzloe Group, Inc. v. Mask*, 2007 WL 9719332, at *5 (M.D. Florida Apr. 9, 2007) ("In the instant case, there was no contract between [Plaintiff] and the Defendants, and the original January 10th program (as distinguished from the copies the Defendants made) was not created for any litigation purpose. These differences render [*Perini*] inapposite."). *See also Images Audio Visual Prods., Inc. v. Perini Bldg. Co.*, 91 F. Supp. 2d 1075, 1084 (E.D. Mich. 2000) ("[T]wo facts take on great significance in the Court's first-factor inquiry: (1) that Plaintiff was *retained* in part to create a photographic

record of Defendant's construction efforts in the event that a dispute arose; and (2) that *the agreement between Plaintiff and Defendant* specifically established the price for additional copies of Plaintiff's works.") (emphasis added). Given the lack of any contract between Plaintiff and Aubrey Webb, *Perini* is certainly distinguishable.

Plaintiff cites *Ross v. Miller's Rexal Drugs, Inc.*, 1990 WL 314290 (Ga. Super. Oct. 10, 1990), a state court decision easily distinguishable based on Plaintiff's own allegations. In *Ross*, defendants tried to use the subpoena power to compel a photographer to provide photographs prepared for the plaintiff in that proceeding without paying the customary fee. *Ross v. Miller's Rexal Drugs, Inc.*, 1990 WL 314290, at *1 (Ga. Super. Oct. 10, 1990). Once again, the Court noted the importance of a relationship between the parties in *Ross* that does not apply to this case, given the Plaintiff does not allege any contact with Aubrey Webb leading to her preparing the Report. In addition, the Court's analysis in *Ross* essentially came down to a concern with the negative market affects that could happen if vendors could be, "*compelled* through the discovery process to turn over [their] work at no cost to the opposing side[.]" *Ross v. Miller's Rexal Drugs, Inc.*, 1990 WL 314290, at *2 (Ga. Super. Oct. 10, 1990) (emphasis added). Plaintiff was obviously not compelled to make her Report broadly publicly available in its entirety on PACER: Plaintiff readily admits this was the exact design of her business model. Complaint, ¶ 25. Plaintiff's case is therefore distinguishable from *Ross*.

### c.  The Complaint is Otherwise Insufficiently Pled

Plaintiff's Complaint is full of unsupported conclusory statements.  This is easily shown in Plaintiff's attempt to allege "secondary liability." *See* Complaint, ¶ 80 ("Defendants are each secondarily liable for their respective employees, contractors, associates, and agents' infringement when they publicly displayed Olson's Report in Court for their client without paying to secure a license to use Olson's Report.")  Secondary liability must be established through either contributory infringement or vicarious infringement. Contributory infringement

requires: "(1) direct infringement by a third party; (2) knowledge by the defendant that third parties were directly infringing; and (3) substantial participation by the defendant in the infringing activities." *Rundquist v. Vapiano SE*, 798 F. Supp. 2d 102, 126 (D.D.C. 2011) (internal citation omitted). Plaintiff fails to even allege the existence of infringing third parties, meaning Plaintiff has not adequately pled contributory infringement.

Plaintiff has not alleged any direct financial interest that Aubrey Webb had in any infringing activity, instead making unsupported conclusory allegations of financial benefit. *See e.g.* Complaint ¶ 85 ("Defendants directly benefitted financial from copyright infringement of the Report."). Regardless, Plaintiff has not alleged any relevant supervisory relationship Aubrey Webb had with anyone who engaged in any infringing activity. Plaintiff has failed to plead the required elements of secondary liability. In addition, for all the same reasons asserted above that Aubrey Webb has no direct liability, it would be impossible for Plaintiff to properly plead a claim of secondary liability. As such, any claims based on secondary liability must be dismissed for failure to state a claim upon which relief can be granted, without leave to amend.

## IV.   Aubrey Webb is Entitled to Recover Attorney's Fees, Expenses, and Costs Incurred in Defending This Case

Aubrey Webb is entitled to recover reasonable attorney's fees, expenses, and costs incurred in defending this action. *See* 17 U.S.C. § 505 (in copyright infringement cases, the court "may . . . award a reasonable attorney's fee to the prevailing party as part of the costs."). A district court has the discretion to award attorney's fees to the prevailing party, and "[p]revailing plaintiffs and prevailing defendants are to be treated alike[.]" *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994). Courts are instructed to consider, "several nonexclusive factors" which include, "frivolousness, motivation, objective unreasonableness[,] and the need in particular circumstances to advance considerations of compensation and deterrence." *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1985 (2016)). "Although objective reasonableness carries significant weight,

courts must view all the circumstances of a case on their own terms, in light of the Copyright Act's essential goals." *Kirtsaeng*, 136 S. Ct. at 1979.

In considering Aubrey Webb's request for attorney's fees, expenses, and costs, the Court should place particular emphasis on Plaintiff's objective unreasonableness and the need for deterring further litigation. As stated herein, Plaintiff essentially conceded the unreasonableness of her claim by alleging that Aubrey Webb and other similarly situated attorneys could have sought to reference her Report through judicial notice, a distinction without a difference to downloading a copy from PACER and filing it again on the docket. This concession demonstrates the unreasonableness of her lawsuit. Furthermore, Plaintiff has litigated, and lost, a prior copyright claim on almost identical facts in the District of Columbia. Additionally, Plaintiff has filed at least three other identical lawsuits in the District of Columbia, the Federal Circuit, and the Second Circuit. Plaintiff should be deterred from continuing to assert these frivolous, belated claims.

## CONCLUSION

For the reasons contained herein, Aubrey Webb respectfully requests that this Court dismiss the Complaint with prejudice and without leave to amend. Defendants also request an award of reasonable attorney's fees, expenses, and costs incurred in defending against this lawsuit, pursuant to 17 U.S.C. § 505.

Dated: January 13, 2026                    Respectfully submitted,


By:      /s/Aubrey Webb_____
         Aubrey Webb, Pro Se, and as attorney for
         Law Offices of Aubrey Webb, P.A.
         PO Box 09118
         Miami, FL 33101
         FBN: 622915
         786-302-0928
         aubrey@aqwattorney.com

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned herby certifies that on January 13, 2025, a true and correct copy of the

foregoing motion was served upon all counsel of record via the Court's CM/ECF system.

/s/ Aubrey Webb
Aubrey Webb